ination and consideration of the question were due to the able counsel who presented the argument, but were not incorporated in the written opinion as forming the basis of the judgment of the court. The language is emphatic, viz.: "The libellants having failed to establish fault in the Fashion, the libel must of course be dismissed."

Although still of the opinion that the preponderance of the testimony as to the speed of the Pacific, the only point determined by the court, was no more than the necessary steerage power under the circumstances, yet I cannot conscientiously so direct the form of the decree, as to preclude the respondents from recovering in their suit, by a prejudgment in this court, when the defense of casualty is not set up in their answer, and the point was not directly specified in the issue. I more readily adopt this course, as the libellants have notified the court of their intention to appeal, which is attended without cost, where the testimony can be more minutely examined with reference to this point, and where my error of judgment can and will be corrected by the circuit judge, and consequently where no damages but the delay of a few months can accrue to the libellants.

NOTE. This cause was taken by appeal to the circuit court of the United States, but with the suit in the district court of the United States, for the district of Ohio, it was compromised.

---

WARD (FRANKLIN v.). See Case No. 5,-055.

WARD (GILBERT v.). See Case No. 5,415.

WARD (HERBERT v.). See Case No. 6,398.

WARD v. The M. DOUSMAN. See Case No. 17,153.

---

## Case No. 17,156.

### WARD v. MISSISSIPPI & M. R. CO.

[Nowhere reported; opinion not now accessible.]

---

## Case No. 17,157.

### WARD et al. v. NEW ENGLAND SCREW CO.

[1 Cliff. 565.] [1]

Circuit Court, D. Rhode Island. Nov. Term, 1860.

GUARDIAN AND WARD—AUTHORITY TO SELL LAND—SPECIAL LEGISLATIVE AUTHORITY—CONSTRUCTION OF STATUTE—DEEDS—CONDITIONS PRECEDENT AND SUBSEQUENT.

1. Inasmuch as the legislature of a state may confer upon the courts the power of granting licenses for the sale of the estates of minors, and the investment of the proceeds, it may, it seems, also exercise the power directly by special act.

2. Such act is remedial, and cannot be distinguished in principle from a general law upon the same subject.

---

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

3. In this case the act of the legislature was not an exercise of the power of eminent domain.

4. A guardian petitioned the legislature for leave to sell a portion of the minors' estate to a town, "to erect a pest-house upon." Leave was granted by special act to sell the land "for the said purpose," and to invest the proceeds for the benefit of the minors: and the act, moreover, provided that the deed should "vest in the purchaser all the right, title, and interest" that the parent of the minors had in the estate. Held, that the guardian was authorized by the act of the legislature to sell all the right, title, and interest in the property which the parent of his wards in his lifetime possessed, and to make and execute a sufficient deed for that purpose.

5. Pursuant to that license a conveyance of the land was made to the town treasurer or his successors in office forever, "to erect a pest-house upon," to enjoy "in the manner aforesaid," "discharged from all manner of encumbrances," and in the granting clause it purported to be an absolute and full conveyance of the land, without condition. Held, that the words "to erect a pest-house upon" were merely descriptive of the use to which the town intended to put the land, at the time of purchase, and were not intended as a condition in the grant, or a limitation of the estate conveyed.

6. Whether conditions in a conveyance be precedent or subsequent, as there are no technical words to distinguish them, is a matter of construction, and depends upon the intention of the party creating the estate.

7. Conditions subsequent are not favored in law, and must be strictly construed.

8. The habendum of a deed was as follows: "To have and to hold the said bargained and granted premises with all the privileges and appurtenances thereto belonging, or in any wise pertaining, for the use aforesaid, forever." Held, the words "for the use aforesaid" could not be construed as a condition in the grant, or a limitation to the estate.

This was an action of trespass and ejectment to recover possession of a tract of land situated in the southerly part of the city of Providence. Special pleas were filed by the corporation defendants, setting up title in themselves. To each of these pleas the plaintiffs [Andrew H. Ward and wife and others] filed a replication traversing the matters of fact set forth in the pleas, and tendering an issue to the country. They also filed a special replication controverting the title set up by the defendants, and setting up a title in themselves to a moiety of the premises by descent in regular succession, through one George Field, and to the other moiety by virtue of a quit-claim deed from one Mary Manchester, who was the sister of George Field. George and Mary Field were the children and heirs of Isaac Field, who died in 1781; and the land in controversy, together with other real estate, descended to them at the decease of their father, as tenants in common. George Field subsequently died, leaving one son as his sole heir, who also died, leaving as his lawful heirs two daughters, Anna H. and Mary G., who were plaintiffs in this suit. Mary Field married Isaac Manchester, who died, leaving her a widow; and on September 21, 1855, she, in consideration of ten dollars, released all her title in the premises to Anna H. and Mary G., to whom,